J-A09036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANNIE LEE STEPHENSON | : | |
| | : | |
| Appellee | : | No. 1482 MDA 2016 |

Appeal from the Order Entered August 16, 2016
In the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000430-2016

BEFORE:   GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 01, 2017**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Adams County Court of Common Pleas, which granted the pretrial suppression motion of Appellee, Dannie Lee Stephenson, and suppressed the results of his blood alcohol test.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

---

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the trial court's suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case.  Accordingly, this appeal is properly before us for review.  ***See Commonwealth v. Cosnek***, 575 Pa. 411, 421 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

The Commonwealth raises two issues for our review:

> [WHETHER] THE [TRIAL] COURT ERRED IN APPLYING THE EXCLUSIONARY RULES OF BOTH THE U.S. CONSTITUTION AND THE PENNSYLVANIA CONSTITUTION WHEN A GOOD FAITH EXCEPTION SHOULD HAVE BEEN APPLIED[?]
>
> [WHETHER] THE [TRIAL] COURT ERRED WHEN IT FAILED TO RULE THAT VALID CONSENT TO A BLOOD DRAW WAS OBTAINED PRIOR TO ANY IMPLICATION OF IMPLIED CONSENT LAW AND WHEN THE COMMONWEALTH WAS NOT GIVEN THE OPPORTUNITY TO DEVELOP THE RECORD ON THAT ISSUE[?]

(Commonwealth's Brief at 6 and 15, respectively).[2]

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.

**Commonwealth v. Goldsborough**, 31 A.3d 299, 305 (Pa.Super. 2011),

*appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citation omitted).

"The suppression court's conclusions of law, however, are not binding on an

---

[2] The Commonwealth's appellate brief is missing a statement of questions involved, as well as a statement of jurisdiction, the order in question, a statement of the relevant scope of review and standard of review, and a statement of the case. **See** Pa.R.A.P. 2111. These omissions are significant. Nevertheless, we decline to waive the Commonwealth's issues on these grounds.

appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." ***Id.*** (quoting ***Commonwealth v. Keller***, 823 A.2d 1004, 1008 (Pa.Super. 2003), *appeal denied*, 574 Pa. 765, 832 A.2d 435 (2003)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Thomas R. Campbell, we conclude the Commonwealth's issues merit no relief.  The trial court opinion comprehensively discusses and properly disposes of the questions presented.  (***See*** Trial Court Opinion, filed August 16, 2016, at 4-12) (finding: Trooper Frazer properly complied with Pennsylvania's then-valid implied consent statute pursuant to 75 Pa.C.S.A. § 1547(b) when she took Appellee to hospital for blood draw; nevertheless, under ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), police can no longer conduct warrantless blood test based on implied consent; ***Birchfield*** held criminal penalties imposed by implied consent laws vitiate consent to blood draw; good faith exception to exclusionary rule is inapplicable here due to significant privacy rights involved in conducting blood draw; good faith exception fails to further aims of Article I, Section 8 of Pennsylvania Constitution under these circumstances; Commonwealth presented no evidence of exigent circumstances; Appellee claimed that threat of enhanced criminal penalties coerced his consent to blood draw; Appellee was in custody when he signed DL-26 form; inherently coercive

atmosphere of custodial arrest leaned against finding of voluntary consent; police did not inform Appellee that he could refuse blood draw; conversely, DL-26 form explained that if Appellee refused, he would receive harsher penalties; under objective standard, reasonable person in Appellee's position would consent to blood draw because refusal would automatically mean harsher criminal punishment; Commonwealth suggested Appellee's statement prior to arrest, "just take me," was valid consent for blood draw; this limited statement hardly demonstrated Appellee intentionally relinquished or abandoned known right or privilege; under totality of circumstances, Appellee did not provide knowing and voluntary consent for blood draw).[3]  Accordingly, we affirm.

Order affirmed.

_____

[3] The Commonwealth also argues the court should have allowed the Commonwealth to present evidence of Appellee's prior DUI arrest to support its argument that Appellee voluntarily consented to the blood draw because evidence of Appellee's prior DUI would have shown Appellee knew it was standard procedure to have blood drawn following a DUI arrest.  Therefore, Appellee knew Trooper Frazer was about to take him to the hospital for a blood draw, and Appellee consented when he said, "Just take me."  We reject this contention.  Even if Appellee knew it was routine to have blood drawn following a DUI arrest, this fact does not make Appellee's consent voluntary.  Appellee's past experience with DUI arrest was irrelevant to the matter before the court.  The court properly excluded evidence of Appellee's prior DUI.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/1/2017</u>

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

**COMMONWEALTH OF PENNSYLVANIA**          CP-01-CR-430-2016

**VS.**

**DANNIE L. STEPHENSON**

## OPINION ON DEFENDANT'S OMNIBUS PRE-TRIAL MOTION FOR SUPPRESSION OF EVIDENCE

Presently before this Court is Defendant Dannie L. Stephenson's Omnibus Pre-Trial Motion filed July 12, 2016, seeking suppression of evidence. This Court held a suppression hearing on August 15, 2016. The issue before the Court is whether Defendant voluntarily consented to a blood draw pursuant to Pennsylvania's Implied Consent Law, **75 Pa. C.S.A. § 1547**, following Defendant's arrest for DUI. Based upon the following findings of fact and conclusions of law, the Court will grant Defendant's Motion to Suppress.

## FINDINGS OF FACT

1. Trooper Megan Frazer is a member of the Pennsylvania State Police Department. She has been a state trooper for three and a half years.

2. On January 13, 2014, Trooper Frazer was dispatched to the scene of a two vehicle crash on State Route 30 near Fleshman Mill Rd. and Mount Pleasant Rd.

3. When Trooper Frazer arrived at the scene, she observed a van flipped over onto its side.

1

4. Trooper Frazer made contact with the driver of the van, Defendant Dannie Stephenson. Defendant was sitting on the curb when Trooper Frazer arrived.

5. Trooper Frazer told Defendant to stand up, and she then observed classic signs of intoxication described as swaying back and forth, blood shot eyes, and a strong odor of alcohol coming from Defendant's body and breath.

6. Trooper Frazer requested that Defendant perform field sobriety tests, which Defendant attempted and failed.

7. Upon failing the field sobriety tests, Defendant purportedly said, "Just take me."

8. Trooper Frazer handcuffed Defendant and placed him under arrest on suspicion of driving under the influence.

9. Trooper Frazer transported Defendant in her patrol vehicle to Gettysburg Hospital to have Defendant's blood drawn.

10. While at the hospital, Trooper Frazer read Defendant the DL-26 Form, which states: "If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of

2

72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum

of five years in jail and a maximum fine of $10,000."

11. Defendant signed the DL-26 Form, and a sample of Defendant's blood was

taken.


## CONCLUSIONS OF LAW

1. Trooper Frazer placed Defendant under arrest for driving under the influence,

    prior to transporting Defendant to Gettysburg Hospital.

2. Defendant's consent to provide a blood sample was not voluntary.


## LEGAL STANDARD

In a suppression hearing, the Commonwealth has the burden to establish

by a preponderance of the evidence the admissibility of those items the accused seeks

to preclude. *Commonwealth v. Ruey*, 892 A.2d 802, 807 (Pa. 2006).

The Fourth Amendment of the United States Constitution guarantees "the right of

the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures."[1] The Fourth Amendment is applicable to the

states through the Fourteenth Amendment of the U.S. Constitution. *Commonwealth v.*

*Kohl*, 615 A.2d 308, 311 (Pa. 1992). Pennsylvania's Constitution specifically

guarantees citizens the right to be "secure in their persons . . . from unreasonable

searches and seizures."[2] A search or seizure is reasonable only if "it is conducted

pursuant to a search warrant issued by a magistrate upon a showing of probable

---

[1] U.S. Const. amend. IV.

[2] Pa. Const. art. I, § 8.

3

cause." ***Kohl***, 615 A.2d at 313. When police obtain evidence in violation of an individual's Fourth Amendment rights, the Commonwealth is precluded from using that evidence at trial. ***Commonwealth v. Pratt***, 930 A.2d 561, 563 (Pa. Super. 2007).

"The taking of a blood sample or the administration of a breath test is a search." ***Birchfield v. North Dakota***, 136 S. Ct. 2160, 2173 (2016). **See also *Commonwealth v. Ellis***, 608 A.2d 1090, 1092 (Pa. Super. 1992) (citing ***Commonwealth v. Hipp***, 551 A.2d 1086 (Pa. Super. 1988)) ("The administration of a blood test is a search within the meaning of the Fourth Amendment if it is performed by an agent of the government."). In the current case, the police officer requested Defendant provide a blood sample after arresting him for a DUI offense. Since Defendant's blood was taken at the request of law enforcement, the blood draw was a search and must comply with both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution to be admissible at trial.

The United States Supreme Court has explicitly held "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving."[3] ***Birchfield***, 136 S. Ct. at 2184. Conversely, absent an exception to the warrant requirement, a blood test conducted without a warrant, "incident to a lawful drunk-driving arrest[,]" violates the Fourth Amendment.[4] ***Id.*** at 2185 n. 8.

## DISCUSSION: EXCLUSIONARY RULE

"The exclusionary rule originated to deter unlawful police practices by depriving law enforcement officials of the benefits derived from using unlawfully obtained

---

[3] The Court found breath tests did not offend the Fourth Amendment since "breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests . . . ." ***Id.*** at 2185.
[4] As compared to a breath test, blood tests entail a significant bodily intrusion, as well as implicate serious concerns regarding an individual's privacy rights. ***Id.*** at 2178.

4

information." ***Commonwealth v. Brown***, 368 A.2d 626, 630 (Pa. 1976) (citing ***Mapp v. Ohio***, 367 U.S. 643 (1961)). The Commonwealth argues the exclusionary rule is inapplicable to the current case because the police officer was acting in accordance with a then valid statute.[5] **See** Commonwealth's Supplemental Brief/Response to Motions Pursuant to Birchfield v. North Dakota and Beylund v. Levi, Director, North Dakota Department of Transportation at 1, 3-7. In making this argument the Commonwealth relies heavily on ***Illinois v. Krull***, 480 U.S. 340, 345-46, 360 (1987), which found the police officer acted "in objective good faith, on a statute that appeared legitimately to allow a warrantless administrative search . . . ." and reversed the lower court's holding that the evidence had to be suppressed. However, the Supreme Court resolved the case using ***United States v. Leon's***[6] analysis of the exclusionary rule and the desire to deter police misconduct. **See *Krull***, 480 U.S. at 349-60.

Prior to ***Birchfield***, police officers were not required to obtain a search warrant before asking a defendant to submit to a blood test. Instantly, since police officers were acting in compliance with the statute as it was then enacted, and not in bad faith, ***Leon's*** aim of deterring police misconduct is inapplicable in the current case.

Furthermore, Pennsylvania has explicitly held ***Leon's*** good faith exception to the exclusionary rule inapplicable because of the strong privacy rights guaranteed by the Pennsylvania Constitution. **See *Commonwealth v. Edmunds***, 586 A.2d 887, 897-99, 905 (Pa. 1991). As ***Birchfield*** mentioned, a blood draw implicates significant

[5] Prior to ***Birchfield***, under **Pa. C.S.A. § 1547(a)**, a police officer was not required to obtain a search warrant before asking an individual suspected of committing a DUI offense to submit to a chemical test. By driving on a Pennsylvania roadway an individual was considered to have impliedly consented to the test. **§ 1547(a)**.

[6] 468 U.S. 897 (1984).

5

privacy concerns.[7] Pennsylvania places a greater emphasis on an individual's privacy rights and less on police deterrence; thus, extending the good faith exception to the exclusionary rule in this instance fails to further the aims of Article I, Section 8 of the Pennsylvania Constitution.

Nothing in this Court's analysis is meant to suggest or imply that law enforcement officers acted inappropriately in securing blood tests pursuant to the implied consent statutes. To the contrary, law enforcement officers were diligently fulfilling their duty to follow and apply the law. However, the **Birchfield** decision has redefined the parameters within which blood tests may be obtained.

## DISCUSSION: EXIGENT CIRCUMSTANCES

Directly relevant to this case is **Birchfield's** analysis and holding on implied consent laws.[8] The United States Supreme Court found the criminal penalties imposed by the implied consent laws vitiated a person's ability to consent to a blood draw, thus violating the Fourth Amendment. **Birchfield,** 136 S. Ct. at 2186. The Court explained "[i]t is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." **Id.** at 2185. While the Court struck down the criminal penalties, the Court explained its opinion should not "be read to cast doubt [on the civil penalties and evidentiary consequences]" for declining the blood test. **Id.** Finally, in situations such as those of Petitioner Beylund where "consent [to a blood

---

[7] **Birchfield**, 136 S. Ct. at 2178.
[8] Both North Dakota's and Minnesota's statutes made refusing to submit to a BAC test a criminal offense. **Id.** at 2170-72.

6

test] was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests[,]" the Court has left state courts with the task of determining if the defendant's consent to the blood test was actually voluntary. *Id.* at 2186.

Unlike North Dakota and Minnesota, Pennsylvania does not have a separate refusal statute. However, **75 Pa.C.S.A. § 1547(b)** allows the Commonwealth to impose criminal penalties, such as a mandatory sentencing enhancement, on a person who refuses to undergo a chemical test.[9] In essence, a person charged under the general impairment subsection of the DUI statute who refuses the chemical test receives the same punishment as a person found guilty of DUI highest blood alcohol level.[10] The statute also provides for civil penalties such as a license suspension and presentation of evidence at trial of the Defendant's refusal.[11] The aforementioned civil and criminal penalties, contained in the Pennsylvania Department of Transportation's DL 26 form,[12] must be provided by a police officer to each defendant arrested for a DUI offense.[13]

Post-***Birchfield***, the sentencing enhancements contained in **75 Pa. C.S.A. § 3804(c)**, and the reference to the criminal penalties in **75 Pa. C.S.A. § 1547(b)(2)(ii)**, are facially unconstitutional. Now, when police officers arrest an individual for a DUI

---

[9]"[I]f the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." **§ 1547(b)(2)(ii)**.

[10] *Id.* at § 1547(b)(2)(ii). Punishment for the highest offense ranges from at least "72 consecutive hours" of jail time all the way to a maximum sentence "of not less than five years in jail." *Id.* at § 3803, § 3804(c)(1)(i), (2)(i), (3)(i).

[11] *Id.* at § 1547(b)(1), (b.1), (c), (e). Since ***Birchfield*** upholds the use of these consequences and the Defendant does not challenge them, this Court will not address them further.

[12] Pennsylvania Department of Transportation, Chemical Testing Warnings and Report of Refusal to Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code in Violation Section 3802 (March 2012).

[13] **§ 1547(b)(2)**.

7

offense, they must procure a search warrant before a defendant's blood is drawn, unless the individual voluntarily consents or an exigent circumstance is present.

For police officers to rely on the exigent circumstance exception they must show an "urgent need" for the evidence such that they cannot wait for a search warrant. *Birchfield*, 136 S. Ct. at 2173.[14] **See also** *Commonwealth v. Roland*, 637 A.2d 269, 271 (Pa. 1994). "'[T]he Commonwealth must show by clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent. . . .'" *Commonwealth v. Lee*, 972 A.2d 1, 4 (Pa. Super. 2009) (quoting *Commonwealth v. Rispo*, 487 A.2d 937, 940 (Pa. Super. 1985)).

When the situation is a warrantless blood draw, a case by case totality of the circumstances analysis is appropriate. **See** *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013); *Birchfield*, 136 S. Ct. at 2174. The "likelihood that evidence will be destroyed if police take the time to obtain a warrant. . . ." is a factor courts can consider. *Roland*, 637 A.2d at 271. However, the evanescent nature of alcohol is no longer sufficient by itself to provide police officers with an exigent circumstance. *McNeely*, 133 S. Ct. at 1556.[15] The Commonwealth insinuates that **75 Pa.C.S.A. § 3802(a)(2)**'s two hour requirement will suffice to meet the urgency needed for an exigent circumstance.[16] Interestingly, **75 Pa.C.S.A. § 3802(g)**'s "good cause" exception appears to obviate the

---

[14] "The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant. It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence." *Birchfield*, 136 S. Ct. at 2173. (internal citations omitted).

[15] The Supreme Court declined to adopt a *per se* rule allowing for an exigent circumstance based on "the natural metabolization of alcohol in the bloodstream." *McNeely*, 133 S. Ct. at 1556.

[16] "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% *within two hours* after the individual has driven, operated or been in actual physical control of the movement of the vehicle." **§ 3802(a)(2)** (emphasis added).

need to show an exigent circumstance.[17] Therefore, in a routine DUI stop where the only exigency is evanescent blood evidence, the Commonwealth will have a difficult time establishing an exigent circumstance. In this case the Commonwealth has presented no evidence to support an exigent circumstance.

In regards to the cases currently pending before this Court, the Commonwealth cannot retrospectively argue an exigency existed at the time of the blood draw. **See Commonwealth v. Arnold**, 932 A.2d 143, 147-48 (Pa. Super. 2007); **Commonwealth v. Demshock**, 854 A.2d 553, 557 (Pa. Super. 2004). Under these cases, an exigency must have existed at the time the search occurred. Prior to **Birchfield**, Pennsylvania's implied consent law allowed police officers to obtain warrantless blood draws from an individual arrested for a DUI offense.[18] Thus, there was no need in most situations to first obtain a search warrant. The Commonwealth cannot now impart an exigency when none existed at the time the blood was drawn.

## DISCUSSION: KNOWING AND VOLUNTARY CONSENT

Here, the police officer did not obtain a search warrant prior to the blood draw. As the Commonwealth has not established an exigent circumstance, the Defendant's blood test results must be suppressed as an unreasonable search and seizure in violation of

---

[17] "Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

    (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and

    (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained."

**75 Pa.C.S.A. § 3802(g).**
[18] **See 75 Pa.C.S.A. § 1547(a).**

9

Article I, Section 8 of the Pennsylvania Constitution unless the Commonwealth establishes he provided knowing and voluntary consent.[19]

The stain of an unconstitutional search may be erased when an individual has validly consented to the search. **See Commonwealth v. Cleckley**, 738 A.2d 427, 429 (Pa. 1999) (citing **Commonwealth v. Slaton**, 608 A.2d 5, 8-9 (Pa. 1992)). Pennsylvania courts have employed an objective, totality of the circumstances approach in deciding whether an individual provided the necessary consent to search. **Smith**, 77 A.3d at 573. "In order for consent to be valid, it must be 'unequivocal, specific, and voluntary.' The appellant must have intentionally relinquished or abandoned a known right or privilege." **Commonwealth v. Dunne**, 690 A.2d 1233, 1236 (Pa. Super. 1997) (citing **Commonwealth v. Gibson**, 638 A.2d 203, 207 (Pa. 1994)).

The **Smith** Court aptly stated:

> In determining the validity of a given consent [to provide a blood sample], 'the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice-not the result of duress or coercion, express or implied, or a will overborne-under the totality of the circumstances.' 'The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent.' Such evaluation includes an objective examination of 'the maturity, sophistication and mental or emotional state of the defendant. . . .' Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

**Smith**, 77 A.3d at 573. (internal citations omitted).

The Pennsylvania Supreme Court has also explained:

> [e]valuation of the voluntariness of a defendant's consent necessarily entails consideration of a variety of factors, factors which, of course, may vary

---

[19] The Commonwealth bears the burden of establishing Defendant knowingly and voluntarily consented to the search. **Commonwealth v. Smith**, 77 A.3d 562, 573 (Pa. 2013).

10

depending on the circumstances. Accordingly, no hard and fast rule can be gleaned that would dictate what factors must be considered in each instance. We find instructive, however, the following factors considered by the Supreme Court of Appeals of West Virginia when evaluating the voluntariness of a defendant's consent: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Cleckley*, 738 A.2d at 433 n. 7 (Pa. 1999) (adopting the factors espoused by the Supreme Court of Appeals of West Virginia).

The Defendant claims, as did Petitioner Beylund in *Birchfield*, that the threat of a criminal penalty coerced him into consenting to the blood draw. At the point Defendant consented to the blood draw he was in custody. Given the inherently coercive atmosphere of custodial arrest, this factor leans against a finding of voluntariness. Defendant was also never advised he had a right to refuse consent. **See Commonwealth v. Strickler**, 757 A.2d 884, 901 (Pa. 2000). In fact, Defendant was read the DL-26 Form, which told him that if he refused the blood draw he would receive harsher criminal penalties than if he consented. Under the required objective standard, a reasonable person would have consented to the search because a refusal would have automatically meant a harsher punishment. With no real choice, the criminal penalties coerced Defendant into consenting to what was otherwise an unconstitutional search. This Court finds the threat of the now unconstitutional criminal penalties for refusal amounted to coercion.

Here, the Commonwealth suggests Defendant's statement "Just take me," was valid consent to a blood test. Such a limited statement hardly demonstrates Defendant

11

intentionally relinquished or abandoned a known right or privilege. It is anything but unequivocal, specific, or voluntary. Much more is required.

Considering the above factors under the totality of the circumstances, this Court finds that Defendant did not provide knowing and voluntary consent. Since the officer did not obtain a search warrant prior to the blood draw and no exigent circumstances were present, the search violated both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

Accordingly, the blood test results must be suppressed.

BY THE COURT:

Dated: August 16, 2016

**THOMAS R. CAMPBELL**
**Judge**

Kristin L. Rice, Esquire
Courtney Hair, Esquire

12